UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BRIAN LEONARD, | ) | CASE NO.  1:12 CV 0247 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C.  NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| THE RESERVE NETWORK, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is *pro se* Plaintiff Brian Leonard's above-captioned *in forma pauperis* Complaint.  He names The Reserve Network as Defendant.   Mr. Leonard alleges, in part, that the Defendant "retaliated because I filed a [sic] injury complaint with the Ohio Industrial Commission by terminating me," in violation of Title VII.  He seeks damages in the amount of $150,000.00.

*Background*

Mr. Leonard was hired by Reserve on or about September 6, 2011.  Five days later, he was assigned to work at Domino Sugar Company. That day, while working on the third shift at Dominos, Mr. Leonard felt a pain in his left foot. Because the level of pain increased and subsided

in intervals, he continued his shift. At the end of the work period, Mr. Leonard went home to soak his foot. When he awoke, he states he could barely put weight on the foot before needing to sit. He contacted the Branch Manager at Reserve, Ms. Perez, to explain his injury and his inability to work. He explained that because the job required constant standing to keep up with the production of packing sugar boxes his foot had "given out." She suggested he see a physician.

On September 15, 2011, Mr. Leonard was examined by a physician who diagnosed his injury as a "foot contusion." The doctor suggested "50% sit down work and 50% standing up normal work" and to take an over-the-counter pain medication.

Mr. Leonard telephoned Ms. Perez to explain the doctor's findings. He was advised to return to Reserve to fill out an injury report on September 16, 2011. Once at Reserve, he explained that the work was too stressful on his foot and that he aggravated some tendons in his heel and middle foot and should not "be on it too much." He added that during the three days he worked at Dominos he was not permitted to take 15 minute breaks after lunch, which "caused my injury as well." (Compl. at 1.)  Ms. Perez replied that "before sending me back out on another work assingment [sic]," she would wait for Mr. Leonard's drug test results and doctor's report.  He then ask her if he would be paid for the three days off "since she told me not to go back to Domino Sugar." Without providing an answer, Ms. Perez suggested he call back after following up with the doctor.

On September 19, 2011, Mr. Leonard visited his physician for a follow-up examination. He was advised to wear support in his shoe and given exercises for his bruised tendon to accelerate the healing. The doctor ultimately cleared him to return to work, however. Mr. Leonard contacted Ms. Perez immediately after the appointment. Because she was busy in meetings, he left

2

a message. When he called the next day, he explained that if she did not want him back he "was going to reopen [his] unemployment for that week." He claims she insisted she would call back. On September 26, 2011, Mr. Leonard "reopened" his unemployment claim.[1]

On October 3, 2011, Mr. Leonard received a letter from the unemployment office. The letter noted Reserve reported that he quit due to an injury and was no longer employed by them. Although he was not requesting unemployment benefits based on his employment with Reserve, Mr. Leonard stated he needed to complete a questionnaire to explain that he was "cleared to work . . .a normal duty after the 19th of September." (Compl. at 2.) He could not understand why Reserve would "lie and present false statements to the unemployment office. . . . Because of this action by the Reserve Network this is discrimination because of temporary disability where I was on restricted duty. . . . Then retaliated because I filed a [sic] injury complaint with the Ohio Industrial Commission by terminating me." (Compl. at 2.)

Without disclosing when this occurred, Mr. Leonard claims the Workers Compensation Commission determined that Reserve was a "work site for me [sic] was a injury [sic] was related." *Id.* When he called Ms. Perez to ask why Reserve reported to the unemployment office that he quit, he claimed she was evasive and professed to know nothing about Reserve's position on this. At her suggestion, Mr. Leonard telephoned the corporate headquarters. The reception he received was "hostile" and he was told he was not entitled to unemployment. He explained he was not seeking unemployment from Reserve, but only wanted the company to pay him for the three days he worked. Mr. Leonard states he abandoned his efforts to be compensated for the three days, but

---

[1]The court presumes Mr. Leonard did not want to wait any longer for Ms. Perez to return his call.

the letter from the unemployment office prompted to him to file this discrimination complaint based on retaliation.

Attached to the Complaint is an Equal Employment Opportunity Commission (E.E.O.C.) Notice of Right to Sue, dated January 24, 2012. The E.E.O.C. noted it could not complete the administrative processing of his charge within 180 days from the date it was filed and terminated its processing.

### Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss any claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. §1915(e).

### Retaliation

In cases involving discrimination against an employee, the plaintiff is not required to allege facts to support a *prima facie* case at the pleading stage. *See Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)(employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas [ v. Green*, 411 U.S. 792 (1973)] framework).[2]

---

[2]To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that:

> (1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action

This standard does not, however, eliminate the basic tenets of notice pleading.

Under Title VII, an employer is prohibited from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e-3(a). Under the applicable federal framework, the "anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67(2006). To allege an employer engaged in actionable retaliation, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) .

As a threshold matter, Mr. Leonard seems to suggest Reserve retaliated against him for filing an injury complaint with the Ohio Industrial Commission, "by terminating me." At the same time, Mr. Leonard argues he "did not understand why [Reserve] would lie" when it advised the unemployment office that he voluntarily quit. While basic Rule 8 pleading standard does not require "detailed factual allegations," FED. CIV. R. 8, it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

against the plaintiff, or the plaintiff was subjected to severe
or pervasive retaliatory harassment by a supervisor; and (4)
there was a causal connection between the protected
activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000)

555 (2007)(citing *Papasan v. Allain*, 478 U.S. 265, 286(1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S., at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.  Thus, this Court cannot refashion Mr. Leonard's Complaint to create a cause of action.  Without first articulating, without contradiction, what discriminatory act Reserve committed, it is impossible to assume an adverse action occurred as a direct result.

Even under the liberal notice pleading requirements of Rule 8 and the liberal perspective in which *pro se* complaints are generally viewed, Mr. Leonard's Complaint does not contain even the minimum requirements of a "short and plain statement" of a claim showing Title VII reprisal discrimination. *See* FED. CIV. R. P. 8(a).  He thus fails to state a claim for relief.

*Conclusion*

Based on the foregoing, Mr. Leonard's Motion to Proceed *in forma pauperis* is granted and the Complaint is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

Donald C. Nugent 2/21/12

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

---

[3]28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.